UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**HARRY LAWRENCE QUIGLEY,**

    **Plaintiff,**

    v.

                          **Civil Action 2:20-cv-5146**
                          **Judge Edmund A. Sargus, Jr.**
                          **Chief Magistrate Judge Elizabeth P. Deavers**

**SETH ABEL,** *et al.***,**

    **Defendants.**

## INITIAL SCREEN REPORT AND RECOMMENDATION

    This matter is before the Court *sua sponte* for an initial screen of Plaintiff's Complaint as required by 28 U.S.C. § 1915(e)(2) to identify cognizable claims and to recommend dismissal of Plaintiff's Complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). Having performed the initial screen, for the reasons that follow, it is **RECOMMENDED** that the Court **DISMISS** this action in its entirety for failure to state a claim upon which relief can be granted.

**I.**

    Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id*. at 31 (quoting *Neitzke v. Williams*, 490

1

U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e)[1] as part of the statute, which provides in pertinent part:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--
>
>     \*        \*        \*
>
> (B) the action or appeal--
>
> (i) is frivolous or malicious;
>
> (ii) fails to state a claim on which relief may be granted; or . . . .

28 U.S.C. § 1915(e)(2)(B)(i) & (ii); *Denton*, 504 U.S. at 31. Thus, § 1915(e) requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted.

To state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). *See Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic*

---

[1] Formerly 28 U.S.C. § 1915(d).

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted). Further, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'" *Garrett v. Belmont Cnty. Sheriff's Dep't.*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. April 1, 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). This lenient treatment, however, has limits; "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

In addition, a federal court has limited subject matter jurisdiction. "The basic statutory grants of federal court subject-matter jurisdiction are contained in 28 U.S.C. § 1331, which provides for '[f]ederal-question' jurisdiction, and § 1332, which provides for '[d]iversity of citizenship' jurisdiction." *Arbaugh v. Y&H Corp*., 546 U.S. 500, 501 (2006). Federal-question jurisdiction is invoked when a plaintiff pleads a claim "arising under" the federal laws, the Constitution, or treaties of the United States. *Id*. (citation omitted). For a federal court to have diversity jurisdiction pursuant to Section 1332(a), there must be complete diversity, which means

3

that each plaintiff must be a citizen of a different state than each defendant, and the amount in controversy must exceed $75,000. *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

**II.**

Plaintiff, who appears to reside in Huntington, West Virginia, is proceeding here without counsel. By order dated October 15, 2020, the Court granted Plaintiff's motion for leave to proceed *in forma pauperis.* (ECF No. 4.)

According to the Complaint, Plaintiff brings his claims under 42 U.S.C. §§ 1983, 1985(2), 1985(3), and 1986. He names as Defendants Seth Abel, Steven Galante, and Stephen Rasmussen in their official and individual capacities. Plaintiff alleges in the Complaint that these individuals all are employees of Nationwide Insurance Company. (ECF No. 1, at ¶ 4.) The exhibits attached to the complaint indicate more specifically that Mr. Abel is Nationwide's managing counsel (*Id*. at Ex. B); Mr. Galante is a claims specialist (*Id.*); and Mr. Rasmussen is the Chief Executive Officer (*Id*. at Ex. C).

Plaintiff's allegations detail an intricate and convoluted fact pattern arising in connection with litigation he filed in the Southern District of West Virginia. The first case, captioned as *Quigley v. City of Huntington, West Virginia*, Case No. 3:17-cv-1906, originally was assigned to United States District Judge Robert C. Chambers and United States Magistrate Judge Cheryl A. Eifert. (ECF No. 1, at ¶¶ 5-6.) Plaintiff asserts that this case currently is pending before the Fourth Circuit Court of Appeals. (*Id*. at ¶ 5.) The second case, captioned as *Quigley v. Williams*, Case No. 3:18-cv-1323, was assigned to Chief United States District Judge Thomas E. Johnston and United States Magistrate Judge Robert W. Trumble.[1] Plaintiff asserts that this case was

---

[1] *Quigley v. Williams*. Case No. 3:18-cv-1323 originally was assigned to United States Magistrate Judge Dwane L. Tinsley. However, a conflict prevented all sitting magistrate judges in the Southern District of West Virginia from participating in the matter. Thus, the matter was

dismissed on appeal "by the biased federal appellate judge Thacker." (*Id.*) Plaintiff further states that this case is pending appeal to the United States Supreme Court. (*Id.*)

In *Quigley v. Williams*, Chief Judge Johnston, in adopting Magistrate Judge Trumble's recommendation that the complaint be dismissed, set forth factual background that also is relevant here.[2] Chief Judge Johnston explained as follows:

> On March 17, 2016, Plaintiff was arrested for brandishing a weapon. This charge was eventually dropped. Plaintiff subsequently filed an action pursuant to 42 U.S.C. § 1983, alleging that the City and police officers violated his civil rights during his arrest. The case was initially referred to Magistrate Judge Eifert; however, Magistrate Judge Eifert recused herself because the Offutt-Nord Law Firm, in which Magistrate Judge Eifert's husband is a founding partner, was selected by the City's insurance company to represent the City and the five named officers. Plaintiff filed a motion to have the Offutt-Nord Law Firm disqualified, which Magistrate Judge Aboulhosn denied.
>
> On January 17, 2018, Plaintiff filed a motion to disqualify Judge Chambers and Magistrate Judge Aboulhosn, alleging bias, due in part to Judge Chambers' son being employed by the City. However, Judge Chambers denied Plaintiff's motion as to himself for failing to identify any interest that may reasonably be affected by the City's employment of his son. Magistrate Judge Aboulhosn also denied Plaintiff's motion as to himself for failing to argue any of the specific examples of when judges are disqualified under the Code of Conduct for United States Judges.
>
> Defendants in that case subsequently filed a motion for summary judgment, which, in a PF&R on April 27, 2018, Magistrate Judge Aboulhosn recommended granting.

---

transferred to Magistrate Judge Trumble. *Quigley v. Williams*, No. 3:18-CV-01323, 2019 WL 1858308, at *1 (S.D.W. Va. Apr. 25, 2019), *aff'd*, 811 F. App'x 868 (4th Cir. 2020).

[2]On November 16, 2018, Magistrate Judge Trumble entered a PF&R in which he recommended that the Complaint be dismissed with prejudice as to Defendants Denver C. Offutt, Jr. ("Offutt"), Steven K. Nord ("Nord"), Ryan Q. Ashworth ("Ashworth"), Robert C. Chambers ("Judge Chambers"), Cheryl A. Eifert ("Magistrate Judge Eifert"), and Omar Aboulhosn ("Magistrate Judge Aboulhosn"), and without prejudice as to Defendants City of Huntington ("the City"), Mayor of Huntington Steve Williams ("Williams"), City Attorney Scott Damron ("Damron"), Joyce Clark ("Clark"), Charles McComas ("McComas"), Alex Vence ("Vence"), Jennifer Wheeler ("Wheeler"), Tonia Page ("Page"), Mark Bates ("Bates"), Mike Shockley ("Shockley"), Tom McGuffin ("McGuffin"), Tina Brooks ("Brooks"), Rebecca Howe ("Howe"), and Carol Polan ("Polan"), the latter eleven Defendants being Huntington City Council Members (collectively "City Council Members"), pursuant to 28 U.S.C. § 1915(e)(2)(B).

5

> On September 27, 2018, Judge Chambers adopted Magistrate Judge Aboulhosn's PF&R and dismissed Plaintiff's case. Plaintiff appealed Judge Chambers' order, arguing that Judge Chambers acted under the influence of extreme bias. (*See id.* at 5.) On April 11, 2019, the Fourth Circuit denied that appeal. *See Quigley v. City of Huntington*, No. 18-2285, 2019 WL 1568608, *1 (4th Cir. Apr. 11, 2019).
>
> Plaintiff filed the present action on September 27, 2018, pursuant to 42 U.S.C. §§ 1983, 1985 and 1986, alleging that Defendants violated his constitutional rights by denying his access to the courts. Plaintiff generally alleges that Defendants conspired to permit the Offutt-Nord Law Firm to appear in his previous civil rights case, causing Magistrate Judge Eifert to recuse herself and thus, denying Plaintiff access to an impartial court process.

*Quigley v. Williams*, 2019 WL 1858308, at *1–2 (record citations omitted). The dismissal of Plaintiff's claims was upheld on appeal. *Quigley v. Williams* 811 F. App'x 868 (4th Cir. 2020).

Having had no luck in prosecuting his claims of judicial bias within the Fourth Circuit, and not to be deterred, Plaintiff now has filed suit in this Court against the defendant employees of Nationwide, the City of Huntington's insurance company, arising from their alleged roles in retaining the Offutt-Nord law firm to represent certain defendants in *Quigley v. City of Huntington.* Similar to his allegations in the *Williams* case, Plaintiff contends that Defendants Abel, Galante, and Rasmussen conspired with "City Attorney Damron; Mayor Williams; City Council; the five Defendant cops; and the Offutt-Nord-Ashworth law firm to employ Offutt-Nord-Ashworth as lead Defense Counsel working in unison with City Attorney Damron as secondary counsel, six months after all Defendants were represented by City Attorney Damron." (ECF No. 1, at ¶ 28.) Plaintiff seeks $5 million in damages from each Defendant for a total request for relief of $15 million. For the following reasons, it is **RECOMMENDED** that Plaintiff's Complaint be **DISMISSED** for failure to state a claim upon which relief can be granted.

6

### III.

**A. Plaintiff's Claims are Barred by the Applicable Statutes of Limitations**

Plaintiff filed his Complaint on October 1, 2020, claiming that the Nationwide Defendants violated his constitutional rights and conspired to commit unlawful acts. (ECF No. 1.) He brings these claims pursuant to 42 U.S.C. §§ 1983, 1985, and 1986.

Although the statute of limitations is normally an affirmative defense that must be raised by defendants in an answer, if the limitations bar appears on the face of the complaint, the Court may apply it during the initial screening process. *See, e.g., Watson v. Wayne County,* 90 Fed. Appx. 814, *1 (6th Cir. Jan. 26, 2004) ("If a statute of limitations defense clearly appears on the face of a pleading, the district court can raise the issue *sua sponte*") (citing *Pino v. Ryan,* 49 F.3d 51, 53–54 (2d Cir.1995)). This Court has applied that rule in cases screened under § 1915A. *See, e.g., Amos v. Solovan*, No. 2:17-CV-819, 2017 WL 4168407, at *2 (S.D. Ohio Sept. 19, 2017), *report and recommendation adopted*, No. 2:17-CV-819, 2017 WL 4553400 (S.D. Ohio Oct. 12, 2017). Thus, the Court must look to the allegations in the Complaint to determine whether the action has been filed within the applicable statute of limitations period.

Plaintiff's allegations clearly state that September 27, 2018, is the date "when the manifest injury to [his] Constitutional rights occurred" and is "the date from which [he] has two years to submit his claim against Nationwide Insurance employees Abel, Galante, and Rasmussen." (ECF No. 1, at ¶ 26.) In asserting that he had two years to "submit his claim," Plaintiff cites to Ohio law. (*Id.*)

As Plaintiff alleges, the statute of limitations applicable to §1983 and §1985 claims arising in Ohio is the two-year statute of limitations found in Ohio Revised Code § 2305.10.

7

*Covarubbia v. Ohio*, No. 2:17-CV-618, 2017 WL 6033857, *1 (S.D. Ohio Dec. 5, 2017).[3] However, a claim under 42 U.S.C. § 1986 must be brought within one year after the cause of action accrued.

"A civil action is commenced by filing a complaint with the court." Fed. R. Civ. P. 3. "[A] complaint is deemed to be filed when it is tendered to the clerk of the appropriate court." *New Boston Dev. Co. v. Toler,* 999 F.2d 140, 142 (6th Cir.1993); Fed. R. Civ. P. 5(d)(2) ("A paper not filed electronically is filed by delivering it: (A) to the clerk; or (B) to a judge who agrees to accept it for filing, and who must then note the filing date on the paper and promptly send it to the clerk."). This is true even where a Plaintiff placed his pleading in the mail prior to the deadline. *Meersman v. Regions Morgan Keegan Tr.*, No. 3:20-CV-00154, 2020 WL 2319785, *5 (M.D. Tenn. May 11, 2020). There is no question that Plaintiff's Complaint was not tendered to the Clerk of this Court, and therefore not filed with this Court, until October 1, 2020, a date more than two years after September 27, 2018.

---

[3] To the extent that Plaintiff's claims may be construed more properly as arising in West Virginia, however, the result here is the same. A two-year statute of limitations also applies to § 1983 claims arising in that state. *Ballock v. Costlow*, 430 F. Supp. 3d 146, 160 (N.D. W.Va. 2019) (citing *McCausland v. Mason Cnty. Bd. of Educ.,* 649 F.2d 278, 279 (4th Cir. 1981); W. Va. Code § 55-2-12; *see also Covey v. United States*, No. 5:11-cv-147, 2016 WL 297717, *5 (N.D. W.Va. January 22, 2016) ("In West Virginia, the residual limitations period for personal injury suits is two years.") Further, under West Virginia law, "'the statute of limitations for a civil conspiracy claim is determined by the nature of the underlying conduct on which the claim of conspiracy is based . . . .'" *Butcher v. City of Clarksburg*, No. 1:19CV181, 2019 WL 5967949, at *4 (N.D.W. Va. Nov. 13, 2019) (quoting *Dunn v. Rockwell*, 689 S.E.2d 255, 269 (W. Va. 2009) (citations omitted)). The two-year statute of limitations set forth in W. Va. Code § 55-2-12 applies to civil conspiracy claims alleging personal injury. *Id.*; *see also Rosario v. Tabor*, No. 2:09-CV-457, 2010 WL 1416721, at *2 (S.D. Ohio Apr. 8, 2010) (citing) *Eidson v. Term. Dep't of Children's Servs.,* 510 F.3d 631, 634 (6th Cir. 2007) ("The statute of limitations applicable to actions under §§ 1983 and 1985 is the same as the statute of limitations applicable to personal injury actions under the law of the state in which the claims arose.")

To the extent that Plaintiff may believe that the date of mailing is to be deemed the date of filing here, he is mistaken.[4] The "prisoner mailbox rule" does not apply to Plaintiff because, as indicated in his Complaint, he is not a prisoner.[5] *Meersman,* 2020 WL 2319785, at *5; *see also Cowden v. U.S. Dep't of Labor,* No. Civ .A.04CV53JMH, 2005 WL 1691036, at *8 n. 10 (E.D. Ky. July 18, 2005) ("The *Houston v. Lack* 'mailbox rule' does not apply to the instant plaintiff, because he is a non-prisoner." ); *Banks v. Astrue,* No. 1:09CV–00022–J, 2009 WL 2046861, at *4 (W.D. Ky. July 13, 2009) (finding a social security plaintiff's complaint to be filed on the date the Clerk received the complaint rather than on the date it was mailed because there is "no authority for the proposition that a free citizen is legally entitled to operation of the mailbox rule (*i.e.,* her complaint should be treated as filed when mailed)"). Accordingly, Plaintiff's Complaint is untimely because the Clerk did not receive it until after the deadline of September 27, 2020 – the deadline Plaintiff's own allegations establish as the date by which he was to file his Complaint against the Nationwide Defendants.[6] The statute of limitations, unless tolled for some reason, therefore, would bar further prosecution of this case. Given the manner in which Plaintiff has asserted his claim, Plaintiff's complaint suggests no reason that the statute of limitations should be tolled in this matter.

### B.  Plaintiff has Failed to State a Claim Under 42 U.S.C. §§ 1983, 1985 or 1986

Even if, under the circumstances here, Plaintiff's Complaint could be considered timely

---

[4] Plaintiff's envelope is postmarked September 24, 2020.  (ECF No. 1-2.)

[5] *See* Complaint, ECF No. 1, at ¶ 3.

[6] To be clear, a two-year statute of limitations applies only to Plaintiff's claims under §§ 1983 and 1985.  Based on Plaintiff's allegations, his claim under 42 U.S.C. § 1986 was required to be filed within one-year of September 27, 2018.  Moreover, as discussed herein, any claim under 42 U.S.C. § 1986 is derivative of a claim under § 1985 such that the failure of his § 1985 claims here dooms his § 1986 claim.  *Ruiz v. Hofbauer,* 325 F. App'x 427, 432 (6th Cir.2009).

filed, it still is subject to dismissal. As set forth in detail below, all of Plaintiff's purported civil rights claims also fail on their merits.

### 1. 42 U.S.C. § 1983

Plaintiff asserts a claim pursuant to 42 U.S.C. § 1983, which creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws...." 42 U.S.C. § 1983. To state a claim under this statute, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003). Defendants, as employees of Nationwide, are private parties and not state actors. As noted, § 1983, by its own terms, applies only to those who act "under color" of state law. "Therefore, as a general rule, § 1983 does not reach the conduct of private parties acting in their individual capacities." *Weser v. Goodson*, 965 F.3d 507, 515–16 (6th Cir. 2020) (citing *Lindsey v. Detroit Entm't, LLC*, 484 F.3d 824, 827 (6th Cir. 2007)).

There are exceptions to this rule.[7] *Weser,* 965 F.3d at 516. As is relevant here, a plaintiff may allege that a private party has engaged in a conspiracy or concerted action with other state actors. *Id*. Under such circumstances, "'[p]rivate persons may be held liable under § 1983 if they

---

[7]In *Weser*, the Court of Appeals for the Sixth Circuit explained that the Supreme Court has recognized "'three tests for determining the existence of state action in a particular case: (1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship or nexus test.'" *Weser*, 965 F.3d at 516 (quoting *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003)). Under the nexus test, a § 1983 plaintiff "must demonstrate that there is a sufficiently close nexus between the government and the private party's conduct so that the conduct may be fairly attributed to the state itself.'" *Id.* (quoting *Lindsey*, at 834). Based on his allegations in the Complaint, Plaintiff does not appear to be relying on any of these exceptions in his attempt to hold the Nationwide Defendants liable under § 1983. Rather, as discussed above, Plaintiff's allegations are limited to asserting a conspiracy.

willfully participate in joint action with state agents.'" *Id.* (quoting *Memphis, Tenn. Area Local, Am. Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004)); *see also Revis v. Meldrum*, 489 F.3d 273, 292 (6th Cir. 2007) ("claims of conspiracies between private and state actors, if adequately alleged, generally suffice to establish state action on the part of the private actors for the purpose of deciding a motion to dismiss"); *Gillispie v. City of Miami Twp.*, No. 3:13-CV-416, 2020 WL 5629677, at *40 (S.D. Ohio Sept. 21, 2020) (citing cases).

The standard for proving a civil conspiracy was set forth by the Sixth Circuit in *Hooks v. Hooks,* 771 F.2d 935, 943-44 (6th Cir. 1985):

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Id.*; *see also Gillispie*, 2020 WL 5629677, at *40. "[T]o be successful in claiming a conspiracy to violate the plaintiff's constitutional rights, the plaintiff "must show that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiff[ ] of [his or her] constitutional rights [or federal statutory rights], and (3) an overt act was committed in furtherance of the conspiracy that caused the injury" to the plaintiff." *Gillispie*, 2020 WL 5629677, at *40 (citing *Jackson v. City of Cleveland*, 925 F.3d 793, 817 (6th Cir. 2019), *cert. denied*, ––– U.S. ––––, 140 S. Ct. 855 (Jan. 13, 2020) (internal quotation marks omitted); *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011)); *see also Marvaso v. Sanchez,* 971 F.3d 599, 606 (6th Cir. 2020) (describing the elements of a §1983 conspiracy claim); *Weser*, 965 F.3d at 516 (same).

Although his Complaint repeatedly refers to the existence of a conspiracy, Plaintiff has not met the basic requirements of pleading a conspiracy sufficient to subject the Nationwide Defendants to liability under § 1983. There are no facts in the complaint suggesting that a single plan existed here. For example, Plaintiff does not detail how he discovered this alleged conspiracy. Similarly, he does not describe any overheard conversations or discovered correspondence between the defendants that support his conclusory allegations. Further, no facts suggest that the parties had an objective to deprive Plaintiff of his constitutional rights. In short, Plaintiff has not demonstrated anything aside from speculation and conjecture arising from his subjective belief that the Nationwide Defendants conspired together to deprive him of his constitutional rights.[8] Because Plaintiff makes only conclusory allegations of a conspiracy unsupported by any material facts, he has failed to state a claim for relief against the Nationwide Defendants under 42 U.S.C. § 1983.[9]

### 2. 42 U.S.C. §§ 1985(2); 1985(3), and 1986

---

[8] Plaintiff's belief that his constitutional rights were violated appears to arise from a misunderstanding of the various federal judicial officers' obligations under 28 U.S.C. § 455 and a mistaken expectation that, once he raised his concerns regarding impartiality with Defendants, they had an obligation, as the insurance company for opposing parties, to adhere to his request to retain a different law firm. Because Plaintiff so clearly has failed to state a conspiracy claim as it relates to the Nationwide Defendants, the Court will not address the merits of any underlying due process claim Plaintiff appears to be attempting to assert here. (*See, e.g.,* Complaint ECF No. 1, at ¶¶ 29, 31 containing allegations of a "pre-determined outcome," "rigging the court process" and "infringement" of his "right to a fair and impartial court process.")

[9] Plaintiff's Complaint also appears to be in the spirit of a thinly-veiled and impermissible collateral attack on the West Virginia District Court's orders in *Williams*. A "collateral attack" is a tactic whereby a party seeks to circumvent an earlier ruling of one court by filing a subsequent action in another court. *Travelers Cas. & Sur. Co. of Am. v. Morgan Acquisitions, LLC*, No. 10-10965, 2010 WL 2474631, at *6 (E.D. Mich. June 14, 2010) (citing *Pratt v. Ventas, Inc.,* 365 F.3d 514, 519 (6th Cir.2004)). The doctrine precludes litigants from collaterally attacking the judgments of other courts. *Id*. (citing *Celotex Corp. v. Edwards,* 514 U.S. 300, 313 (1995)). "[I]t is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected." *Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995) (quoting *Walker v. Birmingham*, 388 U.S. 307, 314 (1967)).

Plaintiff also appears to be attempting to assert conspiracy claims under both 42 U.S.C. §§ 1985(2) and 1985(3).

Section 1985(2) consists of two separate provisions. *Smith v. Breen*, No. 09-2770-STA-TMP, 2010 WL 2557447, at *14–15 (W.D. Tenn. June 21, 2010) (citing *Williams v. St. Joseph Hosp.,* 629 F.2d 448, 451 (7th Cir.1980). "'The first clause of § 1985(2) . . . forbids a conspiracy to deter a party or witness in a federal court from attending or testifying in court, punishing parties or witnesses for having attended or testified in federal court, or influencing or punishing federal jurors.'" *Id*. (quoting *Warner v. Greenebaum, Doll & McDonald,* 104 F. App'x 493, 497 (6th Cir. 2004)). Plaintiff does not appear to be asserting a claim under this provision of § 1985(2). He does not allege that, in connection with the West Virginia federal actions, any of the Nationwide defendants attempted to deter Plaintiff from attending and testifying or attempted to punish him for having done so. He also has not alleged an attempt to influence, or injure, a federal juror.

The second clause of § 1985(2) "applies to conspiracies to obstruct the course of justice in state courts." *Smith v. Breen*, 2010 WL 2557447, at *14–15 (quoting *Bragg v. Madison,* 20 F. App'x 278, 285 (6th Cir. 2001)). To state a claim under the second part of § 1985(2), "'there must be some racial, or perhaps otherwise class-based, invidiously discriminating animus behind the conspirators' actions.'" *Id*. (quoting *Williams,* 629 F.2d at 451.) This appears to be the provision of § 1985(2) under which Plaintiff is attempting to proceed. In his Complaint, he asserts that "42 U.S.C. 1985(2) prohibits conspiracies to impede, hinder, obstruct or defeat the due course of justice." (ECF No. 1, at ¶ 29.) However, Plaintiff fails to allege that the Nationwide Defendants conspired to obstruct justice in state court. Nor is there any allegation in the Complaint that they acted with any discriminatory animus.

13

To establish a violation of 42 U.S.C. § 1985(3), a plaintiff must allege that the defendants conspired together for the purpose of depriving the plaintiff of the equal protection of the laws and committed an act in furtherance of the conspiracy which was motivated by racial or another class-based discriminatory animus. *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cty., Tenn. by & through Traffic & Parking Comm'n*, 805 F. App'x 379, 384 (6th Cir. 2020). Even under a liberal construction of Plaintiff's Complaint, it contains no allegations of a conspiracy motivated by racial or any other class-based animus.

Finally, 42 U.S.C. § 1986 creates a cause of action for a knowing failure to prevent wrongful acts pursuant to a conspiracy to interfere with civil rights. 42 U.S.C. § 1986. Section 1986 claims are derivative of § 1985 claims. Accordingly, a plaintiff who fails to state a claim under § 1985 also fails to state one under § 1986. *Boddie v. Barstow*, No. 2:14-CV-0106, 2014 WL 2611321, at *2 (S.D. Ohio May 2, 2014), *report and recommendation adopted*, No. 2:14-CV-106, 2014 WL 2608123 (S.D. Ohio June 11, 2014) (citing *Ruiz v. Hofbauer,* 325 F. App'x 427, 432 (6th Cir.2009)). Because, as set forth above, Plaintiff has failed to state a claim under § 1985, he also has failed to state a claim under § 1986.

## IV.

For the foregoing reasons, it is **RECOMMENDED** that the Complaint in its entirety be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2) for failure to state a claim upon which relief can be granted. It is **FURTHER RECOMMENDED** that the Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of any Order adopting this Report and Recommendation would not be taken in good faith and, therefore, if Plaintiff moves for leave to appeal *in forma pauperis*, that such request be denied. *See Callihan v. Schneider*, 178

F.3d 800, 803 (6th Cir. 1999), *overruling in part Floyd v. United States Postal Serv.*, 105 F.3d 274, 277 (6th Cir. 1997).

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: November 2, 2020 /s/ *Elizabeth A. Preston Deavers*
ELIZABETH A. PRESTON DEAVERS
CHIEF UNITED STATES MAGISTRATE JUDGE